IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LINDA D. STEVENS,
      Plaintiff,

vs.                                         Case No. 1:05cv55/MMP/EMT

JO  ANNE  B.  BARNHART,
Commissioner of the
Social Security Administration,
      Defendant.

_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (the Act) and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 27, 2001, alleging an onset of disability on August 30, 1991 (Tr. 47-49).[1]  The claim was denied initially (Tr. 30, 39-40) and on reconsideration

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on June 10, 2005 (Doc. 9).

(Tr. 29, 35-37).  On May 18, 2004, following a hearing, an administrative law judge (ALJ) found that Plaintiff was not under a "disability" as defined in the Act at any time when she met the earnings requirement of the law (Tr. 15-23).  On January 14, 2005, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 4-6).  The Appeals Council's action made the ALJ's decision the final decision of the Commissioner and, therefore, subject to review in this court.  Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998).  Plaintiff's appeal from the final decision of the Commissioner is now before this court.

II.      FINDINGS OF THE ALJ

On May 18, 2004, the ALJ made several findings relative to the issues raised in this appeal (Tr. 15-23).  The ALJ found that:  1) Plaintiff last met the non-disability requirements for a period of disability and DIB set forth in Section 216(i) of the Act on December 31, 1996;[2]  2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability; 3) Plaintiff's fibromyositis, tendonitis, and pain disorder are "severe" based on the requirements in the Regulations, but do not meet or medically equal a Listing; 4) Plaintiff's allegations regarding her limitations are not totally credible; 5) Plaintiff has the residual functional capacity (RFC) to lift up to nine pounds; stand a total of six to seven hours a day in two to three hour increments; sit a total of seven to eight hours a day in three to four hour increments; she requires a sit/stand option; she must avoid concentrated exposure to heights, extreme temperatures, and hazardous machinery; she has moderate limitations in basic mental work activities; she must not be required to type or perform substantially similar activities; she cannot lift heavy objects, bend, or repetitively use her right upper extremity; 6) she is unable to perform any of her past relevant work (20 C.F.R. § 404.1565); 7) she is a "younger individual" (20 C.F.R. § 404.1563); 8) she has "more than a high school education" (20 C.F.R. § 404.1564); 9) transferability of skills from any past relevant work is immaterial (20 C.F.R. § 404.1568); 10) Plaintiff has the RFC to perform a significant range of light work (20 C.F.R. § 404.1567); 11) although Plaintiff's exertional limitations do not allow her to perform the full range

_____

[2]Thus, the time frame relevant to this appeal is August 30, 1991 (alleged onset) to December 31, 1996 (date last insured).  Plaintiff states in her memorandum that she was last insured for benefits on December 31, 2006; however, the records reflects that Plaintiff was last insured on December 31, 1996 (Tr. 45, 251).

of light work, there are a significant number of jobs in the national economy Plaintiff can perform;[3] 12) she was not under a "disability," as defined in the Act, at any time through the date of the decision (20 C.F.R. § 404.1520(g)) (Tr. 16, 22-23).

III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) (stating "[t]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied"); *see also* Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance, i.e., "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

----

[3]The vocational expert identified examples of jobs Plaintiff could perform (Tr. 23, 275).  At the sedentary exertional level, there are 360,000 telephone solicitor jobs in the national economy and 5,000 in the state economy and 138,000 dispatcher jobs in the national economy and 8,000 in the state economy (*id.*).  At the light exertional level, there are 300,000 personal attendant jobs in the national economy and 15,000 such jobs in the state economy (*id.*).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps. The steps are:

1.     If the claimant is performing substantial gainful activity, he is not disabled.

2.     If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.     If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.     Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

A.      Personal History

Plaintiff testified that she saw Dr. Little in 1996 for tendonitis in her wrists and fibromyositis in her elbows (Tr. 256-57).  She stated that she first began having problems with her wrists in 1978 and they have progressively worsened (Tr. 266).  In 1996, her wrists were "bad enough that they were interfering with doing anything like typing, or at a computer, or ironing" (*id.*).  The fibromyositis affected different areas of her body intermittently (Tr. 267).  To treat her pain, she would rest the bothersome areas of her body (Tr. 269).  She also used heating pads, cold packs, and took Naprosyn and Darvocet for pain (Tr. 269).

B.      Relevant Medical History

On May 1, 1996, George Little, M.D., wrote a letter stating that Plaintiff suffered from fibromyositis and tendinitis (Tr. 156).  He noted Plaintiff's statement that she was to be involved in job retraining, and he recommended that Plaintiff not be retrained in an area that included typing or lifting heavy objects (*id.*).

C.      Other Information Within Plaintiff's Claim File

Plaintiff was referred to Janet Frank, Ph.D., by Vocational Rehabilitation for an assessment of general personality and was evaluated on February 13, 2001 (Tr. 157-62).  Plaintiff reported to Dr. Frank that she experienced pain in both hands (mostly in her right hand), both legs, neck, right arm, right shoulder, and lower back (Tr. 160).  She rated her average pain as a five on a ten-point scale and stated that it was usually manageable (*id.*).  She also complained of chronic tiredness, numbness and weakness in her hands, and problems with writing, coordination, and dropping things (*id.*).  She reported that she experienced some blurred vision and was referred to an ophthalmology clinic to determine whether this was due to a need for new glasses or diabetic complications (*id.*).  She stated that at times she had problems with attention and concentration, but she believed this was stress-related (*id.*).

Plaintiff described her ability to cope as "good" and her personality as "competitive, productive, argumentative, assertive, outgoing, leader, aggressive, patient, self-confident, organized, playful, responsible, and trusting" (*id.*).  She described her mental state as "happy, worried, and disappointed" (*id.*).  Dr. Frank documented that Plaintiff did not exhibit any pain behavior (*id.*).  She also noted that Plaintiff presented as self-confident and her mood and affect were calm and pleasant

(*id.*).  Plaintiff exhibited no problems with attention, concentration, or memory, and Dr. Frank believed she was of at least average intelligence (Tr. 160-61).  Plaintiff admitted to problems with mood and anxiety, which Dr. Frank thought were connected to stressors in her life, such as finances and medical problems (Tr. 161).

Plaintiff completed the Personality Assessment Inventory, but the testing results were invalid due to inconsistent responses on items of similar content (*id.*).  Dr. Frank documented that there were several possible reasons for the inconsistent responses, including carelessness, confusion, or an attempt to present herself a certain way (*id.*).  Dr. Frank noted that although Plaintiff stated she could see the assessment "well enough," blurred vision may have been a factor, and Plaintiff completed the test rather quickly, so "hurried carelessness" was also a possible cause (*id.*).  Dr. Frank also noted that it was not known if Plaintiff was fatigued after the lengthy interview or if her hand was hurting (*id.*).

Dr. Frank's provisional diagnoses were pain disorder associated with both psychological factors and general medical condition; pain in the hands, neck, shoulders, legs, and back; status post hysterectomy for cervical cancer; diabetes; anemia; arthritis; financial and occupational problems; and a Global Assessment of Functioning (GAF) score of 59[4] (Tr. 162).

On November 21, 2001, David A. Thompson, M.D., wrote a letter to the Bureau of Disability Determination stating that he had seen Plaintiff intermittently since January 14, 1999 for complaints of tendonitis in her shoulders and elbows, significant depression, and chronic neck, hand, and wrist pain (Tr. 177).  Regarding Plaintiff's ability to do work-related physical activities, Dr. Thompson stated that Plaintiff would have no difficulty sitting, standing, or walking; however, she would have difficulty repetitively lifting, carrying, and handling objects (*id.*).  Her work-related mental activities involving understanding, memory, and sustained concentration would be "somewhat impaired" due to her current depression, but "she would have no significant problems with social interaction or

---

[4]Global assessment of functioning is the overall level at which an individual functions including social, occupational, academic, and other areas of personal performance.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30-32 (4th ed. 1994).  It may be expressed as a numerical score. *Id.* at 32.  A score between 51 and 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning  (e.g., few friends, conflicts with peers or co-workers). *Id.*

adaptation" (*id.*).

Steven L. Wise, Psy.D, completed a Psychiatric Review Technique (PRT) on December 4, 2001 (Tr. 178-91).  According to Dr. Wise, Plaintiff had a somatoform disorder[5] under Listing 12.07 of 20 C.F.R. Part 404, Subpart P, Appendix 1, but her impairment did not satisfy the diagnostic criteria of the Listing (Tr. 178, 184).  As a result of this disorder, Dr. Wise opined that Plaintiff had mild deficiencies of concentration, persistence or pace, but no restriction in activities of daily living, no difficulties in maintaining social functioning, and no episodes of deterioration or decompensation (Tr. 186).

At the request of the Office of Disability Determination, Plaintiff was seen by Andres Nazario, Jr., Ph.D, on January 4, 2002 for a "General Clinical Evaluation with Mental Status" (Tr. 192-95).  Plaintiff reported no history of mental illness, nor any treatment for mental or emotional difficulties (Tr. 192).  She reported that she was depressed after the death of her mother and was put on Zoloft, but she realized it was situational depression and discontinued taking Zoloft (Tr. 193).  Plaintiff reported that she gets depressed "sometimes," but not clinically, and stated that when "things are going fine she is as happy as anyone else" (*id.*).  Plaintiff also reported that "all of her limitations are physical and not mental" (*id.*).

Dr. Nazario documented that Plaintiff was cooperative throughout the interview, her mood was stable, and her affect was appropriate (Tr. 194).  She demonstrated the ability to concentrate, was persistent in her approach, her pace was adequate, and she appeared able to interact appropriately with others (*id.*).  Dr. Nazario opined that Plaintiff was not suffering from any mental or psychological disorder (*id.*).

Donald Warren Morford, M.D., completed a physical RFC Assessment on January 11, 2002 (Tr. 211-18).  According to Dr. Morford, Plaintiff was able to lift and/or carry twenty pounds occasionally and ten pounds frequently, and she could sit, stand, or walk about six hours in an eight-hour workday (Tr. 212).  Her ability to push/pull was unlimited, other than by her ability to lift

---

[5]Somatoform disorders represent a group of disorders characterized by physical symptoms suggesting a medical disorder.  Somatoform Disorders, *available at http://www.emedicine.com/ned/topic3527.htm* (last updated June 30, 2005).  However, somatoform disorders represent a psychiatric condition because the physical symptoms present in the disorder cannot be fully explained by a medical disorder, substance use, or another mental disorder.  *Id.*

and/or carry (*id.*).  Plaintiff was occasionally able to climb, balance, stoop, kneel, crouch, crawl, and was somewhat limited in her ability to reach overhead with her right arm (Tr. 213-14).  She was to avoid concentrated exposure to extreme temperatures and hazards, but no communicative limitations were established (Tr. 214-15).

Plaintiff was evaluated by Robert A. Greenberg, M.D., on July 10, 2002 (Tr. 219-21).  Plaintiff complained of arthritis in her hands, right shoulder, and lumbar spine, and she stated that her hands had been a problem for twenty-four years (Tr. 219).  Plaintiff had full range of motion of all joints except her lumbar spine (Tr. 220-21).  Her grip strength was decreased, measuring 4/5 bilaterally (Tr. 220).  No evidence of active inflammatory arthritis was present and fine manipulation of her hands was normal (*id.*).  Repetitive muscle testing did not produce fatigue (*id.*).  Dr. Greenberg's impression was probable osteoarthritis of the hands, right shoulder, and lumbar spine, as well as migraine headaches (*id.*).  Dr. Greenberg opined that Plaintiff would be unable to perform work-related physical activities requiring heavy lifting or bending (*id.*).

Tom C. Peele, M.D., completed a physical RFC Assessment on August 9, 2002 (Tr. 222-29).  According to Dr. Peele, Plaintiff was able to lift and/or carry twenty pounds occasionally and ten pounds frequently, and she could sit, stand, or walk about six hours in an eight-hour workday (Tr. 223).  Her ability to push/pull was unlimited, other than by her ability to lift and/or carry (*id.*).  No postural, manipulative, visual, communicative, or environmental limitations were established (Tr. 224-26).

Jane F. Cormier, Ph.D, completed a PRT on August 9, 2002 (Tr. 230-43).  Dr. Cormier documented that there was no mental medical evidence of record prior to December 1996, the date Plaintiff was last insured for DIB (Tr. 242).

V.    DISCUSSION

Plaintiff raises one issue on appeal.  She asserts that the ALJ failed to ask the vocational expert (VE) a question that comprehensively described all of her impairments and, therefore, erred at step five in relying upon the VE's answer to find that Plaintiff could perform available work.

A hypothetical question must comprehensively describe a claimant's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence.  <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985).  However,

Page 9 of 11

the ALJ is not required to include findings in the hypothetical that the ALJ properly rejected as unsupported.  *See* McSwain v. Bowen, 814 F.2d 617, 620 n.2 (11ᵗʰ Cir. 1987).

In the instant case, the ALJ posed a hypothetical question which asked the VE to assume an individual of Plaintiff's age, education, and past work experience, who, along with other physical limitations not in dispute, had mental limitations based on a GAF score of 59, fit the description of the person described in Dr. Frank's psychological report (Tr. 157-62), and had "moderate limitations to basic mental work activities" (Tr. 271-73).  The VE testified that such an individual could not perform Plaintiff's past relevant work, but could perform the jobs of telephone solicitor, dispatcher, and in-home personal attendant (Tr. 275).  Plaintiff's attorney then questioned the VE, asking him whether a person whose mental health caused her to engage in inappropriate behavior at work, such as outbursts or negative interactions/conflicts with peers and coworkers, could sustain employment (Tr. 277-78).  The VE testified that such behavior would not be conducive to sustaining employment (Tr. 278).

Plaintiff first argues that the hypothetical question was flawed because the question was "silent with regard to [Plaintiff's] blurring vision" (Doc. 16 at 9).  However, the record simply does not support a finding that Plaintiff experienced blurred vision during the time frame relevant to her appeal.⁶  The only reference to blurred vision in the record is Dr. Frank's psychological assessment, where she notes Plaintiff's report that she had experienced some blurred vision and was referred to an ophthalmology clinic (*see* Tr. 160).  However, Dr. Frank also noted Plaintiff's comment that she could see well enough to complete the written test (Tr. 161).  Moreover, the reference to Plaintiff having blurred vision was in February 2001, more than four years after Plaintiff's last insured date of December 31, 1996.  Furthermore, Plaintiff did not claim she had blurred vision in her DIB application; she did not mention anything regarding her vision during her hearing before the ALJ; and, when Plaintiff's attorney was given an opportunity to pose hypothetical questions to the VE, he, too, made no mention of any problems related to Plaintiff's vision.  Finally, in 2002, Dr. Greenberg noted that Plaintiff's visual acuity was normal with glasses and her "gross visual fields"

---

⁶Indeed, the Commissioner suggests that Plaintiff's "blurred vision" argument was an "editing error" (i.e., inadvertently not omitted from Plaintiff's memorandum prior to filing (*see* Doc. 19 at 6)), as there is no supportive evidence in the record.

were normal (Tr. 220).  The ALJ did not find Plaintiff's blurred vision to be an impairment and, therefore, did not include blurred vision in the hypothetical question.  The ALJ did not err, as he need not include a finding that is not supported by substantial evidence.

Plaintiff next argues that the VE's testimony that Plaintiff "is not employable as a result of her mental limitations" should have been accepted by the ALJ (Doc. 16 at 11).  As noted above, when Plaintiff's attorney asked the VE whether a person whose mental health caused them to engage in inappropriate work behaviors could sustain employment, the VE stated that such behavior would not be conducive to continued employment (Tr. 277-78).

The record contains no evidence suggesting that Plaintiff's mental limitations would cause her to engage in inappropriate outbursts or negative interactions with others.  Plaintiff appears to argue that because Dr. Frank documented Plaintiff's GAF at 59, she necessarily would be unable to get along with her peers.   This is incorrect.  In describing a GAF of 51 to 60, the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") states as follows:

> **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or coworkers).

First, moderate symptoms and moderate difficulty in functioning are listed in the alternative. Plaintiff need only meet one of these criteria to have a GAF of 59.  Further, the DSM-IV merely lists "conflicts with peers or coworkers" as an example of the behavior of a person with a GAF of 59. It does not require that a person have conflicts with others to have a GAF of 59.  Moreover, Dr. Frank did not document that Plaintiff would be expected to have conflicts with peers or coworkers. To the contrary, Dr. Frank documented that Plaintiff presented as self-confident and her mood and affect were calm and pleasant (Tr. 160).

No physician ever opined that Plaintiff had mental limitations as extensive as Plaintiff suggests.  Dr. Thompson documented Plaintiff "would have no significant problems with social interaction or adaptation" (Tr. 177); Dr. Wise opined that Plaintiff would have no difficulties in maintaining social functioning (Tr. 186); and, according to Dr. Nazario, Plaintiff had no mental or psychological disorder (Tr. 194).  Finally, as Dr. Cormier noted, the record contains no evidence of mental problems prior to Plaintiff's last insured date (Tr. 242).

Additionally, Plaintiff herself never alleged a mental limitation which would cause her to

engage in unacceptable workplace behavior.  In fact, in an interview on August 2, 2002, Plaintiff denied she had any mental health issues and asserted that her concerns were strictly physical (Tr. 58).  Plaintiff also reported to Dr. Nazario that all of her limitations were physical, not mental (Tr. 193).  Thus, because the hypothetical question posed by the ALJ included only those impairments with substantial support in the record and found credible by the ALJ, the ALJ's reliance on the VE's testimony in response to the question was proper.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 11th day of May 2006.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**